Arletha Rose GILBERT, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

and

Johnny GILBERT, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

Nos. 90–SC–217–DG, 90–SC–226–DG.

Supreme Court of Kentucky.

Oct. 24, 1991.

Rehearing Denied Nov. 19, 1992.

Joseph Kerwin, Bowling Green, for appellant in No. 90–SC–217–DG.

Brad Coffman, Coffman & Beck, Bowling Green, for appellant in No. 90–SC–226–DG.

Frederic J. Cowan, Atty. Gen., Elizabeth Myerscough, Asst. Atty. Gen., Crim. Appellate Div., Frankfort, for appellee.

WINTERSHEIMER, Justice.

Arletha Rose Gilbert was convicted of wanton endangerment by complicity; one count of criminal attempt to commit rape, first degree; and nine counts of the use of a minor in a sexual performance by complicity. Johnny Gilbert was convicted of wanton endangerment in the first degree; two counts of rape in the first degree; two counts of criminal attempt to commit rape in the first degree; and nine counts of use of a minor in a sexual performance. The Gilberts were tried together and the judgment of conviction resulted from a jury verdict. Each was sentenced to ten years in prison.

Various issues are raised by the Gilberts including the applicability of K.R.S. 531.310 which prohibits the use of a minor in a sexual performance. They claim that the three teenage children were forced to remove their clothing in the family trailer home as a form of parental discipline and that consequently they are immune from prosecution because of the so-called "family exception" to the statute.

Johnny Gilbert is the stepfather of three teenage daughters, ages 17, 16 and 15. Arletha Rose Gilbert is the natural mother of the three teenagers.

■ Arletha Rose Gilbert first argues that she was prejudiced by the amendment of Counts II and III in the indictment against her codefendant husband. The amendment changed the date of the offenses from 1985 to 1986. We find her complaint unconvincing. The mother was never charged with complicity to these crimes. The amendment did not affect her case.

She claims her codefendant husband based his entire defense on the fact that he could demonstrate that no sexual activity could have occurred with the children dur-

ing the summer of 1985. She states that the prejudice to him affects her case.

The middle stepdaughter testified that her mother and Johnny Gilbert married in May, 1985, and that two incidents of rape occurred that summer. She remembered the time because she was going to be a freshman in high school. The youngest stepdaughter testified that trouble with the husband began the summer after she completed the sixth grade which was the summer after her parents married. Johnny Gilbert testified that he was not married until 1986. Based on this testimony and the Commonwealth's bill of particulars which noted that the girls remembered the dates primarily from their school grade, the trial judge allowed amendment of the indictment.

RCr 6.16 provides that the trial judge may permit an indictment to be amended any time before verdict or finding if no additional or different offense is charged and if the substantial rights of the defendant are not prejudiced. Here, neither the husband or the wife suffered any substantial prejudice from the amendment. The husband did not base his entire defense on a mix up in dates; he also denied any sexual impropriety with the victims. The defendants knew before trial that the husband had no access to the middle child before 1986 and they were not surprised or misled by the indictment or its amendment. The trial judge did not abuse his discretion by permitting the amendment.

The trial judge did not err in allowing the amendment to Counts II and III in the indictment to reflect the dates of occurrence as 1986. Johnny Gilbert claims his entire defense was based on the fact he could demonstrate there was no sexual activity in the summer of 1985. A review of the record indicates that he also denied any criminal activity with his stepdaughters.

We do not believe he was unfairly prejudiced by this amendment and he was not misled. As stated in regard to his wife, RCr 6.16 permits the amendment any time before a verdict if the substantial rights of the defendant are not prejudiced. Here, Johnny Gilbert knew before trial that the dates were calculated by the three step-

daughters remembering in what grade they were enrolled at the time of the incidents. The trial judge did not abuse his discretion when he denied the motion for mistrial.

■ It was not reversible error to allow the introduction of evidence that Johnny Gilbert gave his stepdaughters marijuana and alcohol and that he forced them to watch sexually explicit movies while he and his wife engaged in sexual activities. All three of the teenage children testified that he offered them marijuana and alcohol the first summer he lived with them. The testimony was that the defendants told the girls that if they did not watch the movies they would force them to remove their clothing and make them perform the same acts as depicted in the films. The Court of Appeals correctly found that the evidence reflected a part of the overall scheme to aid the stepfather to attain his objects which was to engage in sexual intercourse with his three stepdaughters. The Court of Appeals correctly analyzed the striking of the words "lustful inclinations" from the jurisprudence of Kentucky. It also acknowledged that since *Pendleton v. Commonwealth*, Ky., 685 S.W.2d 549 (1985), evidence of other crimes is allowed when the crime has a special relationship to the offense charged and shows motive, identity, absence of mistake, intent or knowledge of common scheme or plan.

Arletha Rose Gilbert was charged with complicity to rape, attempted rape and the use of a minor in sexual performance. These charges indicate a pattern of conduct, or common scheme or plan, with her husband from the time of his entry into the home until the girls were taken from the home.

The citation to *Drumm v. Commonwealth*, Ky., 783 S.W.2d 380 (1990) as a support for Arletha Rose Gilbert's position is misplaced. *Drumm, supra,* reiterates the necessity of establishing an exception to the prohibition against introducing evidence of collateral criminal activity. Here the exception has been sufficiently established because the evidence was admitted to show a plan which is an exception recognized by the Federal Rule of Evidence

404(b) which this Court adopted in *Drumm.*

The evidence was not presented to show "lustful inclination" but to indicate a pattern of conduct and motive for the behavior of the defendants. It is necessary for the jury to see the entire picture and evidence that provides the necessary perspective is competent. *Ware v. Commonwealth,* Ky., 537 S.W.2d 174 (1976).

■ It was not reversible error for the trial judge to refuse a directed verdict of acquittal on the four counts of complicity to attempted first-degree rape. Arletha Rose Gilbert was convicted of only one of these counts.

She contends that she was guilty of only neglect and could not be held legally responsible pursuant to *Knox v. Commonwealth,* Ky., 735 S.W.2d 711 (1987). The facts in this case are not identical to those in *Knox, supra.* Here Arletha Rose Gilbert encouraged her daughter to engage in sexual intercourse with Johnny Gilbert and intentionally aided her husband in the commission of rape in violation of K.R.S. 502.-020(1)(b). The youngest daughter advised the mother the first summer that the stepfather had been trying to have sex with the youngest daughter and the middle daughter. On the night of the attempted rape the youngest victim pleaded with her mother that she did not want to get into bed with the stepfather but Arletha Rose Gilbert instructed the youngest and middle daughters to go to the bedroom with her husband because, "You can trust your Dad. He's not going to hurt you." Arletha was not passive, but actively aided her husband in attempting to rape the two youngest children.

Johnny Gilbert contends that the evidence that he introduced his stepdaughter to marijuana and alcohol along with his codefendant wife and forced them to watch sexually explicit movies while they engaged in sexual activity was irrelevant and offered only to show his lustful inclination contrary to *Pendleton, supra.* We find this argument without merit in regard to Johnny Gilbert as it was equally without merit with regard to his wife. The evidence was not introduced to show lustful inclination, but to indicate a pattern of conduct and motive for forcing the young women into adult sexual activity. "In order to determine exactly what did or did not happen at any particular stage in the sequence, it was necessary that the jury see the entire picture ... evidence that provides necessary perspective is competent." *Ware, supra.* Juries do not have to perform their function of fact-finding in a vacuum.

■ Arletha Rose Gilbert was not entitled to a directed verdict of acquittal on the charges of complicity to use a minor in a sexual performance. Arletha Rose Gilbert contends that use of a minor in a sexual performance does not cover the activity in which she and her husband engaged. The youngest child testified that her mother slapped her when told of the attempted rape and was present when the girls were forced to disrobe. Johnny said he would often have his three stepdaughters remove their clothes as a form of discipline. When the girls refused, he had ripped off their clothes and on one occasion cut off the girls' bra with a knife. The girls were forced to remove all of their clothing. They testified that he would stare and gaze at them until he apparently grew tired of looking.

Arletha Rose Gilbert argues that there was no sexual performance, and even so, the acts were a private family matter pursuant to the exception created by K.R.S. 531.300(4)(d). We do not agree because K.R.S. 531.310 applies, and she was guilty of complicity in using a minor in a sexual performance.

Johnny Gilbert's act of ordering the girls to disrobe and ripping off their clothing, meets the statutory element of K.R.S. 531.-310 of "employs, consents to, authorizes or induces a minor." There was a willful or intentional exhibition of the genitals. K.R.S. 531.300(4)(b). This exposure was not a private family situation. An adult stepfather who forces his three teenage daughters, ages 17, 16 and 15 to strip naked cannot be considered to be engaged in a family discipline. Clearly this is not

typical or normal family behavior under any standard.

The acts were obscene and appealed to Johnny Gilbert's prurient interest in sexual conduct involving minors in violation of K.R.S. 531.300(3). Here the stepfather repeatedly ordered the young women to disrobe and stared at them. On other occasions he attempted to have sexual relations with them. Clearly this indicates a prurient interest.

■ The Court of Appeals noted the Missouri case of *State v. George,* 717 S.W.2d 857 (Mo.App.1986), which is arguably inapplicable because Missouri has no family exception in its statute. This case provides some guidance to this Court in reviewing the case before it. In *George, supra,* the defendant argued that there was no performance, but the court rejected this noting that acts engaged in for a profit motive are not the only situations prohibited by the law. Here the defendants advance a similar argument. We find it to be without merit. There is no evidence of any kind in this record to indicate the General Assembly was concerned only with the commercial exploitation and public performances. By no stretch of the imagination do we believe that the General Assembly would condone the behavior of Arletha and Johnny Gilbert in this situation as a suitable example of the family exception clause of the statute.

■ Arletha Rose Gilbert was not entitled to a directed verdict of acquittal because the husband left the trailer on one occasion when the oldest daughter was told to remove her clothing. The record indicates that Johnny Gilbert did not leave the trailer until after the teenager had stripped. The evidence was sufficient to convict Arletha Rose Gilbert of complicity because she took an active role in forcing her daughters to remove their clothing. This is not a failure to act. It is an active participation in the crimes. It was the actions and words of the mother that made the girls submit to these types of criminal sexual exploitations.

We must now consider the arguments presented by Johnny Gilbert in his appeal. Some of the issues will be interchangeable and overlap because of the nature of the trial and the specific behavior of the codefendants.

■ Johnny Gilbert also argues that his statement to police should have been suppressed because he was so intoxicated he could not make a knowing and intelligent waiver of counsel and the right to remain silent. He claims he drank 8 or 9 beers and took 2 to 10 nerve pills in a 30–minute period prior to going to the social worker's office and then to the police station.

A careful examination of the record indicates that Johnny Gilbert remembered the alleged amount of beer and pills he consumed and was able to relate the circumstances around the giving of his statement. There is nothing to indicate that he hallucinated or fabricated the events. He did not appear intoxicated to either the social worker or police officer. Neither of these individuals detected any odor of alcohol on Johnny Gilbert. He was responsive to questioning and had no difficulty communicating and indicated that he understood his constitutional rights. Pursuant to the standard of *Britt v. Commonwealth,* Ky., 512 S.W.2d 496 (1974), there is no reason to believe that he did not voluntarily waive his rights before giving his statement. The trial judge correctly determined that he was capable of understanding his constitutional rights and consequently able to waive them. The trial judge further found that Johnny Gilbert understood what he was doing and saying when he gave his statement. Clearly the trial judge found it difficult to accept the version of events given by Johnny Gilbert.

■ Johnny Gilbert contends that it was error not to admit the testimony of his oldest stepdaughter that she had requested birth control devices and that the second oldest stepdaughter had prior sexual activity with individuals other than the defendant. The oldest daughter was 17 years old, and the second stepdaughter was 16 years old. K.R.S. 510.145 states that in this type of trial, reputation evidence and evidence of specific instances of the complaining witness's prior sexual habits are

not admissible by the defendant. The evidence was properly excluded.

■ It was not reversible error for the trial court to instruct the jury on first-degree wanton endangerment.

Johnny Gilbert claims that the evidence did not support an instruction on first-degree wanton endangerment but only an instruction on the lesser charge of second-degree wanton endangerment. He contends that his conduct may have been wanton but was not extreme wantonness, nor did his behavior constitute a substantial danger of death or serious physical injury to his oldest stepdaughter.

On the night of the incident, his wife testified that Johnny Gilbert was drunk and out of control. Johnny told Arletha to hand him the gun. Arletha took out the gun; put the clip in; one of them cocked it; Johnny put the gun to the oldest child's head and asked her if she believed he would shoot her. Johnny repeated the question, shot the gun at the floor, put the gun back up to her head and asked her if she believed he would blow her brains out; then he repeated the question again. The victim testified the incident ended when Johnny Gilbert put the gun down and got another beer. This Court has held that pointing a gun, whether loaded or unloaded, is conduct sufficient to support an instruction of first-degree wanton endangerment. *Thomas v. Commonwealth,* Ky., 567 S.W.2d 299 (1978); *Commonwealth v. Clemons,* Ky., 734 S.W.2d 459 (1987).

Johnny Gilbert was not entitled to a directed verdict on charges of use of a minor in a sexual performance pursuant to K.R.S. 531.310.

Johnny Gilbert's act of ordering the three stepdaughters to disrobe and ripping off their clothing establishes the statutory elements of "employs, consents to, authorizes or induces a minor." The act was a sexual performance in that it meets the definition of sexual conduct by a minor, and there was a willful or intentional exhibition of the genitals of the young women. The exposure of teenage girls who are 17, 16 and 15 years of age, is not a matter of a private family nature. The adult stepfather forcing his three teenage daughters to disrobe is beyond the typical or normal behavior of any family. As discussed earlier in this opinion in regard to the behavior of the mother, the conduct of the stepfather also amounts to a proper charge of the use of a minor in a sexual performance. There is no comfort in the so-called family exception in a situation of this type.

The judgment of conviction is affirmed.

LAMBERT, REYNOLDS and SPAIN, JJ., concur.

LEIBSON, J., dissents by separate opinion in which COMBS, J., joins.

STEPHENS, C.J., dissents by separate opinion in which COMBS, and LEIBSON, JJ., join.

LEIBSON, Justice, dissenting.

I join in the Dissent by Chief Justice Stephens addressing error in admitting evidence regarding the defendants' lifestyle. This evidence is irrelevant to the specific offenses with which they were charged.

I write separately to address a different issue. The defendants were convicted of nine counts of "use of a minor in a sexual performance," prohibited by KRS 531.310, which was enacted in 1986 as part of a new section on "Sexual Exploitation of Minors" (KRS 531.300–.370) added on to the Chapter in the Penal Code on "Pornography," KRS Chapter 531. The offensive conduct for which these defendants stand convicted has no connection to the production or use of pornography, and KRS 531.310 has been misapplied. Further, even if we are to assume otherwise, the evidence to prove such offenses occurred here failed to meet statutory requirements.

The terms used to specify the elements of the offense set out in KRS 531.310 are assigned statutory definitions in KRS 531.300. We have yet to confront what the General Assembly means by a "sexual performance." KRS 531.300(6) defines "sexual performance" as "any performance or part thereof which includes sexual *conduct by a minor.*" [Emphasis added.] In turn, "sexual conduct by a minor" is defined in KRS 531.300(4) in four subparts. KRS 531.300(4)(d) covers "[t]he exposure, in an

obscene manner, of the unclothed or apparently unclothed human male or female genitals, pubic area or buttocks, or the female breast, ... in any resulting motion picture, photograph or other visual representation," and it contains a *family exclusion:* "exclusive of exposure portrayed in matter[s] of a private, family nature not intended for distribution outside the family." The Majority Opinion has avoided the family exclusion in subpart (d) ("exposure, in an obscene manner") by suggesting that the present situation fits instead under subpart (b), which defines "sexual conduct by a minor" as including "willful or intentional exhibition of the genitals." This is illogical, for two reasons:

1) The phrase being defined in KRS 531.-300(4) is "sexual conduct by a minor" and the proof offered in this case to convict the appellants is that the conduct by the minors was not their "willful or intentional exhibition of the genitals," but on the contrary was the coerced exposure of their unclothed bodies. The terms "willful or intentional" as used in the statutory definition refer to the conduct of the exploited child, not to the conduct of the criminal offender. It is the conduct of the minor which is being defined.

2) It would be irrational for the General Assembly to provide a "family exclusion" for the "exposure" of the child's "unclothed" body but not for the child's "willful or intentional exhibition of the genitals." We should not interpret a statute to provide "an absurd or wholly unreasonable conclusion." *Bailey v. Reeves,* Ky., 662 S.W.2d 832 (1984), and cases cited therein.

The situation presented here is a parallel to the privilege afforded to "confidential communications between" husband and wife protected by KRS 421.210(1). The General Assembly, in its wisdom, has included a "family exclusion" within the definition of a "sexual performance." Their judgment is that, when it comes to "exposure, in an obscene manner, of the unclothed or apparently unclothed human male or female genitals," family privacy is a more important value than debating the limits of offensive intrafamily exposure. The exercise of this value judgment is a matter of substantive law and within the

General Assembly's exclusive responsibility. We cannot, legitimately, expand the limits of what the General Assembly has defined as criminal behavior regardless of our own personal inclinations.

If there should be any doubt whether this family exclusion in the statute applies, that doubt should be resolved in favor of the defendants. The applicable rule of statutory construction is the "rule of lenity," which directs us to interpret a penal statute, if the statute is ambiguous, in favor of the accused: "Doubts in the construction of a penal statute will be resolved in favor of lenity." *Commonwealth v. Colonial Stores,* Ky., 350 S.W.2d 465, 467 (1961). It seems of late that the rule of lenity has been, by and large, honored in the breach. Nevertheless, as yet no one has openly suggested that it should he abandoned, and no opinion of this court has expressly disavowed it.

To return to first premises: what did the General Assembly intend when it added this new section, "Sexual Exploitation of Minors," to the "Pornography" Chapter in the Penal Code? Is a private, intrafamily sexual performance within the scope of activity KRS 531.310 intends to prohibit? This new section is directed toward "sexual exploitation" in a "performance" rather than sexual abuse in other forms which is covered elsewhere in the Penal Code. "Exploitation" for personal gratification within the privacy of the family may well be a form of sexual abuse, but the way in which these children were abused does not fall under the heading of "pornography," nor does it fit the description of the "use of a minor in a sexual performance."

The "family exclusion" should apply equally to "exposing" breasts as it does to "exhibiting" them. We should give the statute a rational interpretation or strike it down.

COMBS, J., joins this dissent.

STEPHENS, Chief Justice, dissenting.

I respectfully dissent.

All three of the movants' teenage daughters/step-daughters testified that the first

summer John Gilbert lived with them, both movants "offered" them marijuana and alcohol. They also testified that their stepfather and mother either "allowed" or "forced" them to watch sexually explicit movies and that movants, Arletha and Johnny, engaged in certain sexual acts in their presence. Both movants objected to all of this testimony.

The Court of Appeals decided, and the majority of this Court concurs, that this evidence "reflected part of an overall scheme to aid the stepfather to attain his objective which was to engage in sexual intercourse with his three stepdaughters." The majority concludes that "the evidence was not presented to show [a] lustful inclination, but to indicate a pattern of conduct and [a] motive for the behavior of the defendants. It is necessary for the jury to see the entire picture and evidence that provides the necessary perspective is competent." *Ware v. Commonwealth,* Ky., 537 S.W.2d 174 (1976).

It is a familiar proposition that a defendant in a criminal case should only stand trial for the crime for which he was indicted. *Jones v. Commonwealth,* Ky., 198 S.W.2d 969 (1947). Each case, in the interest of fair play, should stand on its own. It follows that any exceptions to that rule should be approached with caution and should be strictly limited.

In *Pendleton v. Commonwealth,* Ky., 685 S.W.2d 549 (1985), the victim's older sister testified that she had been sexually abused by her father (the defendant-appellant) for a period of six to seven years although there was no actual intercourse. In upholding the admission of such testimony, we said,

> "Evidence of independent *sexual acts* between the accused and persons other than the victim are admissible if such acts are similar to that charged and not too remote in time provided the acts are relevant to prove intent, motive, or a common plan or pattern of activity." *Id.,* at p. 552.

Thus, tests of admissibility of previous sexual acts are:

1) The acts must be of a sexual nature,

2) The acts must be similar to that charged,

3) They must not be too remote in time,

4) They must be relevant to prove intent, motive, or a plan, or pattern.

In *Lantrip v. Commonwealth,* Ky., 713 S.W.2d 816 (1986), the appellant was convicted of two counts of rape against his adopted daughter, Amanda. Among the evidence admitted were claims of two female witnesses who testified concerning improper *sexual advances* made to them by Lantrip, within a period of time fairly close to that of the charged offense. The conduct of the appellant with respect to these two females was not similar to that charged. We reversed and held that it was improper to admit their testimony because it was for the purpose of showing the appellant's "lustful inclination." Such evidence, we noted, is improper under *Pendleton, supra.* We also said, citing *Pankey v. Commonwealth,* Ky., 485 S.W.2d 513 (1972), that "a defendant is entitled to be tried solely on the question of his guilt of the offense charged in the indictment." *Id,* at p. 817.

Recognizing these principles and applying them as exceptions to the general rule in a narrow manner, I believe that the questioned evidence should have been excluded, and that the improper admission thereof was highly prejudicial.

Applying the aforementioned tests to determine the admissibility of previous sexual acts, one can properly ask:

1) Was this evidence of *sexual acts* between the victim and the accused, or between the accused and persons other than the victim? Clearly the offering of alcohol and marijuana was not a *sexual act.* Equally clearly, the showing of pornographic movies was *not a sexual act.* Finally, while the conduct between the movant and his wife was of a sexual nature, it was between husband and wife, and was not between the victims and the accused. Such were not acts of a similar criminal nature, and are clearly

not within the narrowly construed exceptions set out. This being true, a key element of admissibility is missing, and the evidence should not have been admitted.

2) Were the *sexual acts* (viz., between husband and wife) relevant to prove intent, motive, plan, or pattern? Based on these acts, it would take a quantum leap of logic to conclude that they were admissible for the purpose of showing that the movants had a plan, or had a pattern of committing such acts with the children. Said conduct was "committed" between the movant and his wife, not with the teenage girls. While the conduct of the movant and his wife, in these circumstances, was totally unacceptable, and obnoxious to the normal person, that fact cannot be used to prove a plan, a motive, or intent. Thus, another element of admissibility was absent, and is but another reason to exclude this highly prejudicial evidence.

I believe the majority has expanded the admissibility of prior acts too far beyond the bounds of the law as it now exists and has ignored the tests of *Pendleton* and *Lantrip, supra.* Both movants, John and Arletha Gilbert, were tried with evidence of prior acts which were inadmissible and were highly prejudicial. Their convictions should be reversed, and the case should be remanded to the Warren Circuit Court for a proper retrial.

COMBS and LEIBSON, JJ., join in this dissent.