# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

# $\mathfrak{Supreme\ Court\ of\ Kentucky}$

## 2014-SC-000186-MR

CECIL SALYERS          APPELLANT

ON APPEAL FROM HOPKINS CIRCUIT COURT
V.        HONORABLE JAMES CLAUD BRANTLEY, JUDGE
NOS. 11-CR-00249 AND 12-CR-00111

COMMONWEALTH OF KENTUCKY          APPELLEE

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

In 2005, Appellant, Cecil Walter Salyers, Jr., met Alice Nolan,[1] a single mother of four children. Although Appellant and Alice were not romantically involved, he spent a significant amount of time around her and her children. He took a particularly likening to the youngest daughter, April, who was approximately six years of age at the time. Over the next five years, Appellant acted as a father-figure to April, taking her to and from school, attending her cheerleading practices, and accompanying her to other school functions. On some occasions, April even stayed overnight at Appellant's residence in Hopkins County. In July of 2010, Appellant suffered a massive heart attack. April, who was eleven years old at the time, moved into Appellant's residence on a full-time basis in order to take care of him.

---

[1] Pseudonyms are being used for the mother and victims in order to protect their anonymity.

The crimes at issue in the case before us began when April moved in with Appellant. More specifically, from July 2010 to November 2010, April, her older sister Nicole, and several of their overnight guests were sexually abused by Appellant. While numerous uncharged incidents were described in detail during the trial, we will focus solely on the facts of the crimes charged.

April testified that while living with Appellant he began showing her sex toys and explained how the toys worked. These sexual discussions turned into physical interactions thereafter. April claimed that Appellant touched her breasts and vagina several times and made her touch his penis. Appellant also suggested that April bathe with her friends with the door opened or unlocked, providing him an opportunity to watch the girls in the nude.

April's ten year old friend, Molly, was also victimized by Appellant. Molly came over to Appellant's residence to visit April on several occasions. During nearly every visit, Molly would shower or bathe nude with April while Appellant watched. Molly also alleged that Appellant touched her breasts and "bad spot", referring to her vagina. She also claimed that she witnessed Appellant touch April's "bad spot" several times. In addition, April's twelve year old friend, Kayla, was also sexually abused when she came to visit. According to Kayla, Appellant rubbed aloe on her legs and then moved his hands all the way up to her chest. He continued rubbing her breasts under her shirt until she asked him to stop.

Appellant's abuse was not directed solely at the younger girls. April's older sister, Nicole, who was fifteen in the summer of 2010, and Nicole's friend,

Christy, were also subject to Appellant's abuse. On one particular night, Christy accompanied Nicole to Appellant's house for an overnight visit. The purpose of the visit was so Appellant could help Christy with her music career by taking her photograph. Early in the night, both girls went into Appellant's bedroom where he showed them sex toys and explained how the toys worked. Appellant then told Christy that he would like to use the toys on her and could make her feel "like no other could." Subsequently, Appellant had Christy change into a revealing dress so she could be photographed. Appellant provided the girls with alcohol, while he changed into his underwear. At some point in the night, Appellant began rubbing aloe on Christy's sunburned legs. He then had Christy remove her shirt and told Nicole to rub aloe on Christy's naked chest. He continued to direct the girls until he became physically aroused, at which point Christy put her shirt back on.

Nicole also testified that Appellant made sexual advances towards her on other occasions. On one night, for example, after Nicole had turned sixteen years old, Appellant asked her to come over so she could help him untangle a box of cords. While there, Appellant placed his finger inside Nicole's vagina. Afterwards, Nicole left Appellant's residence and she never returned.

On September 28, 2011, Appellant was indicted by a Hopkins County Grand Jury in case number 11-CR-249 for sexually abusing April, Molly, Nicole, and Christy. The indictment alleged three counts of first-degree sexual abuse of a minor less than twelve years old, two counts of first-degree sexual abuse of a minor less than sixteen years old, five counts of using a minor in a

3

sexual performance, one count of indecent exposure, and one count of unlawful transaction with a minor in the third degree. More than six months later, on April 24, 2012, in case number 12-CR-111, Appellant was indicted for the second time. This indictment alleged that Appellant committed first-degree sexual abuse against Kayla. The two indictments were consolidated and tried together.

A Hopkins County Circuit Court found Appellant guilty of the following seven crimes: four counts of first-degree sexual abuse, including one count for each victim with the exception of Nicole; two counts of using a minor in a sexual performance; and third-degree unlawful transaction with a minor. The jury recommended a sentence of forty years' imprisonment, which the trial court summarily imposed. Appellant now appeals his conviction and sentence as a matter of right pursuant to § 110(2)(b) of the Kentucky Constitution.

### Prosecutorial Misconduct

Appellant first argues that the Commonwealth committed prosecutorial misconduct during its closing argument by using the analogy that Appellant was a spider, trapping little girls in his web. The Commonwealth's closing argument included the following fable-type story, which portrayed Appellant as the spider:

> Once upon a time there was a spider . . . [named] Cecil . . . . [H]e met a woman who was single, divorced, four kids, no help from husband, no finances, literally drowning. Along came [the Spider] . Let me help you out here. Let me take care of those little babies . . . . And he got a house [nearby] and he put up a web, and he got an interior decorator to make it look like something it wasn't, and he began to invite in the little ones . . . . And Cecil the Spider began spinning his web. He was trying to add [Christy] to the pile, but

4

[she] was smart enough to run away, and she started crying, "Spider Alert!" And the police responded, and the officer from the "government" showed up to say, "I see a spider web. I recognize it because I work with them." And he began plucking the victims off the web, bringing them one at a time [and asking them], "Tell me how you got there . . . ." And you tear the web down, and what do you find? . . . . Cecil the Spider.

Appellant argues that this closing argument was so prejudicial that it encroached upon his constitutional right to due process of law. Appellant, however, failed to object to any of the above-referenced statements of the Commonwealth. Consequently, he must now demonstrate that the Commonwealth's statements were flagrant, constituting a "manifest injustice." *See Justice v. Commonwealth,* 987 S.W.2d 306, 316 (1998) ("Absent contemporaneous objections, 'prosecutorial misconduct' is not grounds for reversal, unless the acts complained of rise to palpable error . . . .").

In reviewing Appellant's claim of prosecutorial misconduct, we must focus on "the overall fairness of the trial and may reverse only if the prosecutorial misconduct was so improper, prejudicial, and egregious as to have undermined the overall fairness of the proceedings." *Brewer v. Commonwealth,* 206 S.W.3d 343, 349 (Ky. 2006). The majority of Appellant's brief focuses on the four factors listed in *Hannah v. Commonwealth,* 306 S.W.3d 509, 518 (Ky. 2010) which are used when evaluating the flagrant nature of the Commonwealth's misconduct. However, our analysis does not proceed that far, as we do not believe that the Commonwealth's statements were improper.

5

This Court has made clear that "a prosecutor is permitted wide latitude during closing arguments and is entitled to draw reasonable inferences from the evidence." *Graham v. Commonwealth,* 319 S.W.3d 331, 341 (Ky. 2010) (quoting *Commonwealth v. Mitchell,* 165 S.W.3d 129, 132 (Ky. 2005)). After reviewing the Commonwealth's remarks, in the context of the entire trial and the evidence presented therein, we believe the comments were well within the bounds of proper argument. The prosecutor's comments were permissible inferences buttressed by evidentiary support. Indeed, there was no mention of facts that were not already presented to the jury. The Commonwealth merely employed a unique method of explaining its theory of guilt to the jury. The use of metaphor is an entirely legitimate tool of argument and persuasion. Considering that Appellant was found not guilty of some of the crimes charged, including a first-degree sexual abuse charge, we can conclude that the Commonwealth's statements neither impinged upon the jury's ability to adduce Appellant's guilt, nor did it affect the outcome of trial. The argument was not error, and certainly does not rise to the level of "palpable" or "manifest injustice."

### KRE 404(b) Evidence

Appellant next complains of the Commonwealth's introduction of inadmissible KRE 404(b) evidence. Prior to trial and as required by KRE 404(c), the Commonwealth notified Appellant of its intent to present the jury with evidence that Appellant showed the victims his sex toys, demonstrated how the toys worked, and even offered to use them on one of the girls. The

6

Commonwealth argued that while such evidence may be prejudicial, it was so inextricably intertwined with the circumstances surrounding the investigation that its introduction was unavoidable. Appellant filed a motion *in limine* to prevent the introduction of the evidence on the grounds that its probative value was outweighed by its prejudicial effect. The trial court ruled that evidence of the sex toys was an "integral part of the Commonwealth's case and [was] inextricably intertwined in the conduct alleged by the Commonwealth." We agree.

The admissibility of KRE 404(b) evidence is within the sound discretion of the trial court. *E.g., Clark v. Commonwealth,* 223 S.W.3d 90, 96 (Ky. 2007). A defendant's prior bad acts are inadmissible "to show action in conformity therewith." KRE 404(b). However, KRE 404(b)(2) allows the admission of evidence of other wrongs or acts "[i]f so inextricably intertwined with other evidence essential to the case that separation of the two (2) could not be accomplished without serious adverse effect on the offering party." As the Court has explained, "the key to understanding this exception is the word 'inextricably.' The exception relates only to evidence that must come in because 'it is so interwoven with evidence of the crime charged that its introduction is unavoidable.'" *Funk v. Commonwealth,* 842 S.W.2d 476, 480 (Ky. 1992). We will not exclude the evidence simply because "it may tend to prejudice the accused in the minds of the jurors . . . ." *Schambon v. Commonwealth,* 821 S.W.2d. 804, 811 (Ky. 1991) (quoting *Jones v. Commonwealth,* 554 S.W.2d 363, 367 (1977)).

7

During the trial, the jury heard testimony that Appellant had shown April, Nicole and Christy actual sex toys. Alice in turn showed the toys to Molly. The jury was also informed that Appellant explained to the girls how the toys worked and then demonstrated how the toys vibrated by holding a battery against April's leg and by also holding the actual toy against an unspecified part of Nicole's and Christy's bodies. In addition, the jury heard testimony that Appellant offered to use the sex toys on Christy and make her feel "like no other." As mentioned, Appellant was not charged with committing these specific acts.

We agree with the trial court that the above-referenced testimony was allowable in order to provide the jury with a complete, unfragmented detail of the events surrounding Appellant's victimization of the girls. *See Kerr v. Commonwealth*, 400 S.W.3d 250, 261-62 (Ky. 2013) (quoting 1 Federal Evidence Ch. 4 § 4:33 (Christopher B. Mueller and Laird C. Kirkpatrick 3d ed.)); (404(b) evidence is inextricably intertwined when the evidence is "necessary in telling and understanding the story of the charged crimes"). Considering that four of the victims' testimonies would include some account of Appellant's sex toys, in addition to April, Nicole and Christy's separate experiences of Appellant demonstrating the toys by touching them, we conclude that such evidence was likely unavoidable when procuring the girls' natural account of the crimes as they occurred. This Court has previously found such evidence to be admitted because it is "germane to the overall sequence of events surrounding the crimes . . . ." *Clark v. Commonwealth*, 267

8

S.W.3d 668, 681 (Ky. 2008). Furthermore, it can easily be inferred that Appellant used the toys as a way to gauge the girls' familiarity with sex and likewise introduce the topic so as to normalize sexual conduct. Such "normalizing conduct" is admissible even though it also establishes potential criminal acts. *See Schambon,* 821 S.W.2d at 811. For these reasons, we believe the trial court did not abuse its discretion in allowing the introduction of the sex toy evidence.

Appellant also mentions four other instances of allegedly inadmissible KRE 404(b) evidence being presented to the jury. Specifically, Appellant states that it was error for the Commonwealth to introduce testimony that (1) Appellant confiscated the phone of one of April's friends who is not a victim in the case before us; (2) Appellant commented on the aforementioned friend's breasts; (3) Appellant tried to enter the bathroom when Kayla and April were bathing and complained because the door was locked; and (4) Appellant required one of April's friends who has not previously been mentioned to take a bath with April and demanded that the door remain open.

Appellant never objected to the aforementioned testimony. It is only on appeal that Appellant complains of this evidence. Unfortunately for Appellant, he does not provide the Court with even one specific argument as to why the admission of this evidence constitutes reversible error. In fact, the Commonwealth did not address this issue due to Appellant's lack of argument. Consequently, we will not engage in a substantive review. *See Webster v. Commonwealth,* 438 S.W.3d 321, 327 (Ky. 2014) (the Court refused to analyze

9

appellant's argument because he did "not state how the alleged error amounts to palpable error or how he suffered a manifest injustice at the hands of the trial court."). It is not sufficient to make a blanket statement that all of the complained of testimony is prejudicial. Such a statement does not demonstrate that the testimony was so egregious and jurisprudentially intolerable so as to affect the fairness of the trial. This Court "will not engage in palpable error review pursuant to RCr 10.26 unless such a request is made and briefed by the [A]ppellant." *Shepherd v. Commonwealth*, 251 S.W.3d 309, 316 (Ky. 2008).

### *Improper Joinder*

Appellant's next assignment of error is that he was denied a fair trial and due process of law when the trial court denied his motion to sever the charges. As mentioned, Appellant was indicted for the first time in September of 2011. The first indictment concerned Appellant's sexual misconduct in relation to April, Molly, Nicole and Christy. Appellant filed a motion to sever the charges in March of 2012. On April 13, 2012, the trial court denied Appellant's motion because it believed that there was sufficient resemblance between the crimes to render joinder proper. The following week, Appellant was indicted for the second time for sexually abusing Kayla. Both indictments were subsequently consolidated. Appellant urges this Court to conclude that it was reversible error to try all the crimes together. Instead, Appellant believes the trial court should have severed the charges so that he was tried separately for crimes committed against the victims who were twelve years of age or younger.

10

Essentially, Appellant maintains that he was prejudiced by the crimes charged against the younger girls, April, Molly and Kayla.

Kentucky Rules of Criminal Procedure ("RCr") 9.12 permits two separate indictments to be tried together if they could have been joined in a single indictment. Pursuant to RCr 6.18, joinder of offenses in a single indictment is appropriate "if the offenses are of the same or similar character or are based on the same acts or transactions connected together or constituting parts of a common scheme or plan." On the other hand, RCr 8.31 requires the separation of offenses "[i]f it appears that a defendant or the Commonwealth is or will be prejudiced by a joinder of offenses . . . ." The trial court has broad discretion in regard to joinder and its ruling will not be overturned absent a showing of clear abuse of that discretion. *Violett v. Commonwealth*, 907 S.W.2d 773, 775 (Ky. 1995).

Appellant contends that prejudice resulted from the trial court's refusal to sever the charges relating to the younger girls because those offenses would have been inadmissible in a trial of the offenses against the older girls, Nicole and Christy. *See Commonwealth v. English*, 993 S.W.2d 941, 944 (Ky. 1999). However, we note that "evidence of independent sexual acts between the accused and persons other than the victim, if similar to the act charged, and not too remote in time, are admissible to show intent, motive or a common plan." *Anastasi v. Commonwealth*, 754 S.W.2d 860, 861 (Ky. 1988) (*citing Pendleton v. Commonwealth*, 685 S.W.2d 549 (Ky. 1985).

11

The crimes committed against both sets of victims are similar enough to show Appellant's intent, motive, and modus operandi. The offenses committed against the younger and older girls occurred during the same time period and in Appellant's home while visiting Alice's two daughters. The sexual acts are similar in nature, as is the method Appellant employed to get the victims to engage in such conduct. As discussed, Appellant employed the use of sex toys for both the younger and older victims in an attempt to bring sexuality into the normal realm of conversation. Appellant rubbed aloe on both sets of victims in an attempt to fondle the girls' breasts and vaginal areas. In fact, Appellant used the guise of rubbing aloe to soothe the skin on both Kayla and Christy in order to touch or view their breasts. Therefore, we must conclude that there was sufficient similarity between the crimes to render joinder appropriate.

We must also note that even if this Court were to assume that joinder was erroneous, we cannot conclude that the error was reversible because Appellant has not demonstrated that he suffered prejudice. Appellant was found not guilty of sexually abusing Nicole. Clearly, the jury was able to fairly evaluate each crime and each victim. *See Peyton v. Commonwealth*, 253 S.W.3d 504, 514 (Ky. 2008). For that reason, we believe that the "efficiency in judicial administration by the avoidance of needless multiplicity of trials was not outweighed by any demonstrably unreasonable prejudice to the [Appellant] as a result of the consolidations." *Brown v. Commonwealth*, 458 S.W.2d 444, 447 (Ky. 1970).

12

***Directed Verdict***

Appellant's last assignment of error is that the trial court erred in failing to grant him a directed verdict of acquittal on the consolidated counts of Use of a Minor in a Sexual Performance ("UMSP"). There were two separate incidents that the prosecution argued constituted UMSP. The first occurred when April and Molly took a shower together at Appellant's home. The second alleged instance of UMSP occurred when Appellant urged Christy to remove her shirt and bra, and then had Nicole rub aloe on her bare breasts. It is the first incidence that Appellant claims a directed verdict should have been granted. At the trial court level, Appellant argued that he was entitled to a directed verdict on the ground that showering together is not obscene and therefore cannot be classified as "sexual conduct." The trial court denied Appellant's motion. On appeal, Appellant brings forth the same argument, but also now claims that a directed verdict was appropriate because he never actually saw any of the "private parts" of the girls' bodies. Of course, this second ground was not raised to the trial court and is therefore not preserved for review. Nonetheless, Appellant requests palpable error review pursuant to RCr 10.26.

This Court will reverse a denial of a motion for a directed verdict "if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt . . . ." *Commonwealth v. Benham,* 816 S.W.2d 186, 187 (Ky. 1991) (citing *Commonwealth v. Sawhill,* 660 S.W.2d 3 (Ky. 1983)). In other words, in reviewing the elements of the crime, the Court must consider whether "the evidence is sufficient to induce a reasonable juror to believe beyond a

13

reasonable doubt that the defendant is guilty . . . ." *Benham,* 816 S.W.2d at 187. We must also keep in mind that when ruling on a motion for a directed verdict, the trial court must "assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony." *Id.*

The crime of UMSP is proscribed in KRS 531.310(1), which makes it a felony for an adult to "induce[] a minor to engage in a sexual performance." The term "sexual performance" is defined in KRS 531.300(6) as "any performance or part thereof which includes sexual conduct by a minor." In pertinent part, KRS 531.300(4)(d) defines "sexual conduct by a minor" as "[t]he exposure, in an obscene manner, of the unclothed or apparently unclothed human male or female genitals, pubic area or buttocks, or the female breast . . . ." The term "obscene" is defined in KRS 531.300(3) as "the predominant appeal of the matter taken as a whole is to the prurient interest in sexual conduct involving minors."

With these definitions in mind, we turn to Appellant's first argument that the girls showering was not a sexual performance within the meaning of KRS 531.300(6), rather it was subjectively non-sexual. Appellant argues that *Jenkins v. Commonwealth,* 308 S.W.3d 704 (Ky. 2010) is factually similar. In that case, the defendant, Jenkins, mentored a six-year old boy. *Id.* at 706. One day, Jenkins took the child and his friend to a public swimming pool. *Id.* After swimming, the two boys and Jenkins showered together naked in the pool locker room. *Id.* at 707. Pool employees peeked in on the group shower and

14

noticed nothing out of the ordinary. *Id.* Even so, Jenkins was charged with numerous crimes, including one count of indecent exposure for each boy. *Id.* at 708. The trial court granted a directed verdict in favor of Jenkins on the indecent exposure charge as it related to the child's friend. *Id.* However, he was found guilty of indecently exposing himself to the child mentoree. *Id.* On appeal, this Court held that the Commonwealth failed to prove the elements of the crime as to each boy. *Id.* at 714. We concluded that "[m]ale nudity in a men's locker room with showers is certainly not unusual, and standing alone, it is not likely to cause affront or alarm, and is not a crime." *Id.*

We believe the shower situation in *Jenkins* is distinguishable to the case before us. First and foremost, *Jenkins* did not involve the crime UMSP. While UMSP and indecent exposure have similar elements, the crime of indecent exposure requires an exposure of one's genitalia which "is likely to cause affront or alarm . . . ." KRS 510.148. "Affront or alarm" is different from the UMSP element of exposing oneself in an obscene manner. The Court found that the "affront or alarm" element was not met because male showering in these types of situations is fairly common. *Id.* at 714.

The shower that took place in Appellant's house is completely different from the shower in *Jenkins*. An adult male viewing two teenage girls showering in his residence is far from usual. Such an activity can be viewed as obscene, falling below contemporary standards and appealing to Appellant's prurient interest in sexual conduct. We believe the situation before us is more similar to that in *Gilbert v. Commonwealth*, 838 S.W.2d 376 (Ky. 1991). In *Gilbert*, the

15

defendant, who was the victim's step-father, would force his three teenage step-children to disrobe after which he would stare at the girls until he grew tired. *Id.* at 379. He claimed it was a "form or discipline" and therefore did not involve a "sexual performance." *Id.* This Court concluded that the acts were obscene, appealing to the step-father's prurient interest in sexual conduct. *Id.* at 380. Likewise, Appellant's request that the girls shower in the nude, together, and at his residence where he could observe, was enough evidence to induce a reasonable juror to believe that Appellant's intent was to appeal to his own prurient interests in sexual conduct.

Appellant also claims that a directed verdict was appropriate because he never actually saw any of the girls' "private parts." Appellant suggests that there was no evidence that he saw or could have seen any of the girls' genitals, pubic area, breasts, or buttocks. After a careful review of this argument, we can find no palpable error. This Court has made clear that a jury is free to make reasonable inferences from the evidence presented. *E.g., Martin v. Commonwealth,* 13 S.W.3d 232, 235 (Ky. 1999). In the case before us, the jury was presented with evidence that Molly and April took a shower together completely nude while Appellant watched. Undoubtedly, the jury could logically conclude that Appellant saw at the very least the girls' buttocks or breasts. Consequently, we find that Appellant was not entitled to a directed verdict of acquittal on the charge of UMSP.

For the forgoing reasons, the Hopkins Circuit Court's judgment is hereby affirmed.

16

All sitting.  All concur.


COUNSEL FOR APPELLANT:

Susan Jackson Balliet
Assistant Public Advocate


COUNSEL FOR APPELLEE:

Jack Conway
Attorney General of Kentucky

Jeanne Deborah Anderson
Assistant Attorney General

17