# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

**THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.**

RENDERED: FEBRUARY 20, 2025
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2023-SC-0453-MR

BOBBY LEE ANDERSON, JR.                           APPELLANT

V.                ON APPEAL FROM GRAVES CIRCUIT COURT
               HONORABLE TYLER L. GILL, SPECIAL JUDGE
                      NO. 20-CR-00258

COMMONWEALTH OF KENTUCKY                    APPELLEE

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

A Graves County jury convicted Bobby Anderson ("Anderson") of two counts of unlawful transaction with a minor, three counts of incest, two counts of third-degree sodomy, one count of third-degree rape, one count of third-degree attempted rape, eight counts of first-degree sexual abuse, and one count of being a second-degree persistent felony offender. The Graves Circuit Court thereafter sentenced Anderson to life imprisonment. Anderson now appeals as a matter of right and challenges his convictions. *See* KY. CONST. § 110(2)(b). Having reviewed the record, the arguments of the parties, and the applicable law, we affirm the Graves Circuit Court.

## I. FACTS & BACKGROUND

In 2014, Anderson's minor stepdaughter K.C. accused Anderson of sexually abusing her over a period of several years while they shared a home.

Since 2008 or 2009, K.C. lived with her mother, Jennifer Moore ("Moore"), and Anderson in a single-room building on land owned by Anderson's mother. K.C. was roughly ten or eleven years old at this time. K.C. regularly slept on a couch, while Moore and Anderson slept in a bed behind that couch. K.C.'s mother, Moore, faced several health problems and routinely took medication that affected her alertness. According to K.C.'s testimony at trial, Anderson made sure that Moore took her medication every night. K.C. testified that Anderson would regularly use those opportunities, while Moore was asleep, to sexually abuse her.

K.C. testified that Anderson always abused her on the building's couch while her mother was in bed. According to K.C., Anderson usually initiated his abuse by first rubbing her feet with lotion or Vaseline. K.C. specifically testified to multiple instances in which Anderson manipulated her clothes and touched her vagina with his fingers or his penis. K.C. also testified to one occasion in which Anderson penetrated her vagina with his penis. K.C. testified that there were multiple instances in which Anderson licked her vagina and simultaneously put his penis in her mouth. K.C. testified that she frequently attempted to wake her mother by making sounds while Anderson was abusing her.

After enduring years of abuse, K.C. revealed Anderson's abuse to her stepmother, Tammy Crisp, while she was visiting Tammy's home. K.C. had a close relationship with Tammy, who had raised her prior to moving in with Moore and Anderson. K.C. testified that she told Tammy about Anderson's

2

abuse because she was aware that Anderson would soon be incarcerated on different criminal charges. Tammy reported K.C.'s allegations to the authorities in June 2014. Anderson was later incarcerated in November 2014. It would not be until December 2020, however, that the Commonwealth charged Anderson, by way of information, with twelve counts of criminal conduct stemming from K.C.'s allegations. Specifically, Anderson was charged with eleven counts of sexual abuse in the first degree, and one count of sodomy in the third degree. In March 2023, the Commonwealth presented the case to a Graves County Grand Jury, which returned a superseding eighteen-count indictment charging Anderson with various sex crimes and with being a persistent felony offender. The parties proceeded to trial in Graves Circuit Court on April 26, 2023.

Prior to trial, however, the Commonwealth notified Anderson of its intention to introduce evidence of Anderson's other crimes and prior bad acts through the testimony of his biological daughter M.A. According to the Commonwealth, M.A. planned to testify that Anderson had sexually abused her after K.C. had moved out of Anderson's home. During Anderson's trial, M.A. did take the stand and testified that she visited Anderson in the summer of 2014. M.A. testified that on one occasion she was asleep in her room at Anderson's mother's house, and she awoke to find that Anderson had put his hand inside her shorts and was touching her vagina. M.A. testified that she asked Anderson what he was doing, but he responded, "nothing," and left the room. M.A. testified that she told Anderson's mother, Lorraine, about this incident and later told her school counselor as well. The record on appeal

3

indicates that Anderson was also separately indicted for crimes he allegedly perpetrated against M.A.

At his trial on the instant charges, pertaining to K.C., Anderson's defense was one of complete innocence. Anderson testified in his own defense and denied that he had sexually abused K.C. or M.A. He maintained that he treated K.C. as if she was his own biological child.

Ultimately, the jury convicted Anderson on all eighteen counts: two counts of unlawful transaction with a minor, three counts of incest, two counts of third-degree sodomy, one count of third-degree rape, one count of third-degree attempted rape, eight counts of first-degree sexual abuse, and one count of being a second-degree persistent felony offender. The Graves Circuit Court sentenced Anderson to a life of imprisonment.

Further facts will be developed below as necessary.

## II.    ANALYSIS

On appeal, Anderson advances three arguments advocating for the reversal of his convictions. First, he asserts that the trial court erred in admitting improper evidence of his other crimes and prior bad acts in contravention of Kentucky Rule of Evidence ("KRE") 404(b). Second, he argues that the trial court erred in denying his pretrial motion to continue his trial due to the Commonwealth's desire to introduce M.A.'s testimony. Third, he argues that the trial court erred in failing to order a continuance on the morning of the first day of trial after it learned that his defense counsel had failed to review

4

allegedly exculpatory evidence prior to trial. This Court, however, disagrees with Anderson's arguments and affirms the Graves Circuit Court.

## A. The trial court did not err in admitting evidence of Anderson's other crimes or prior bad acts.

Anderson first alleges that the trial court improperly admitted extensive evidence of his other crimes and prior bad acts under KRE 404(b), thereby causing him to suffer substantial prejudice at trial. Specifically, Anderson argues that the trial court improperly permitted: (1) K.C. to testify to her knowledge that Anderson was going to prison; (2) M.A. to testify regarding her allegation of sexual abuse against Anderson; (3) testimony about Anderson's conduct toward K.C.; (4) evidence of Anderson's insistence that Moore take her sedative medications; and (5) K.C. to testify that Anderson would blow marijuana smoke in her face prior to the abuse.

### 1. KRE 404(b)

Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." KRE 401. Under KRE 402, "[a]ll relevant evidence is admissible" unless otherwise excluded by the law or our rules of evidence. "Evidence which is not relevant is not admissible." KRE 401. However, even relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of undue prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." KRE 403. Unduly prejudicial evidence has been defined as evidence

5

that "appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish, or otherwise may cause a jury to base its decision on something other than the established propositions in the case." *Richmond v. Commonwealth,* 534 S.W.3d 228, 232 (Ky. 2017) (quoting *Butler v. Commonwealth,* 367 S.W.3d 609, 615 (Ky. App. 2012)) (internal quotation marks omitted).

Despite these general rules regarding relevance, "a defendant may not be convicted on the basis of low character or criminal predisposition, *even though* such character or predisposition makes it appear more likely that the defendant is guilty of the charged offense." *Billings v. Commonwealth,* 843 S.W.2d 890, 892 (Ky. 1992). Thus, under KRE 404(b), "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." The purpose of this Rule is to avoid an unfair inference that a person's character as demonstrated by the commission of *other* bad acts indicates he likely also engaged in bad acts relevant to the case. *Gasaway v. Commonwealth,* 671 S.W.3d 298, 333 (Ky. 2023) (citing KRE 404(a)).

However, KRE 404(b) provides two exceptions in which evidence of other crimes, wrongs, or acts may be admissible. First, other bad acts evidence may be admissible if offered to prove something other than an impermissible inference on the basis of character, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." KRE 404(b)(1). Second, such evidence may also be admissible if it is

6

"so inextricably intertwined with other evidence essential to the case that separation of the two (2) could not be accomplished without serious adverse effect on the offering party." KRE 404(b)(2).

In *Bell v. Commonwealth,* 875 S.W.2d 882 (Ky. 1994), we set forth the three factors that a trial court must consider in determining whether to admit evidence of other crimes, wrongs, or acts under KRE 404(b): relevance, probativeness, and prejudice. As to relevance, the trial court must consider whether the proffered evidence is relevant for some purpose other than to prove the defendant's criminal disposition. *Id.* at 889. As to probativeness, the trial court must consider whether there is sufficiently probative evidence that the defendant committed the other crime, wrong, or act. *Id.* at 890. Finally, in considering prejudice, the trial court must determine whether the potential prejudice from the admission of the proffered evidence substantially outweighs its probative value. *Id.* In considering these factors, the trial court "must apply [KRE 404(b)] cautiously, with an eye towards eliminating evidence which is relevant only as proof of an accused's propensity to commit a certain type of crime." *Id.* at 889.

We review evidentiary rulings under KRE 404(b) for abuse of discretion. *Gasaway*, 671 S.W.3d at 331. An abuse of discretion occurs when "the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

With these evidentiary rules in mind, we address each of Anderson's arguments in turn.

7

## 2. K.C.'s Knowledge That Anderson Was Going to Prison

The trial court permitted K.C. to testify that she reported Anderson's abuse in June 2014 because, at that time, she had reason to believe that Anderson was going to prison. K.C. testified that as a result of this knowledge, she did not have to be afraid of Anderson's reaction. In allowing reference to Anderson's unrelated imprisonment, the trial court specifically required that the Commonwealth and the witness avoid using the adjective "federal" when describing Anderson's imprisonment. Furthermore, at Anderson's request, the trial court issued the following admonition to the jury:

> The references to the Defendant going to prison are not to be considered as proof of guilt in this case. His service in prison had nothing to do with any case involving sexual offenses, physical violence, or minors or females. The subject matter of that case is totally irrelevant to the matter you are considering in this case.

Anderson argues that the mention of his imprisonment was unduly prejudicial and that its admission does not pass the *Bell* test. We disagree.

In the context of sex offense cases, we have held that evidence concerning the alleged victim's fear of retaliation from the defendant is relevant to prove why the alleged victim did not report the alleged abuse sooner. In *Alford v. Commonwealth*, 338 S.W.3d 240, 250 (Ky. 2011), this Court discussed the admissibility of evidence that the defendant had threatened and beaten the alleged sexual assault victim and the alleged victim's family members. In *Alford*, the defendant argued that the evidence was inadmissible under KRE 404(b), as it was not probative as to whether the rape and sodomy charges occurred and served only to poison the sentiment of the jury against him. *Id.*

8

This Court disagreed and held that the evidence concerning the defendant's threats of violence was relevant in light of the alleged victim's testimony that she was afraid to report the abuse out of fear that defendant would hurt her or her family. *Id.*

Where evidence of prior bad acts provides the setting and context for the discovery of the crimes, it may be inextricably intertwined with the charged crimes, and therefore properly admissible under KRE 404(b)(2). In *Clark v. Commonwealth*, 267 S.W.3d 668, 681 (Ky. 2008), the mother of sexual abuse victims did not immediately confront her physically abusive cohabitating boyfriend about sexually abusing the children because she was afraid that he would harm her. The mother waited until the next day to report him. *Id.* The *Clark* Court held that:

> [T]he setting and context of the events surrounding [the mother's] discovery of the sexual abuse of her children, and her reasons for not contemporaneously confronting [her long-term boyfriend, the] Appellant about it, were germane to the overall sequence of events surrounding the crimes and to the events which led to them being reported to authorities. As such, this evidence was inextricably intertwined with other evidence critical to the case.

267 S.W.3d at 681.

In the present case, K.C.'s knowledge that Anderson was going to prison was relevant not only because it explained why K.C. reported the abuse when she did, but also because it provided necessary context concerning the discovery of the abuse. Similar to the victim in *Alford*, K.C. stated that she was afraid of Anderson and what he may do if she were to report the abuse. She testified that it was not until she learned that Anderson would be going to

9

prison that she felt safe reporting the abuse to her stepmother, Tammy. As we recognized in *Alford*, K.C.'s fear of retaliation by Anderson and her knowledge of his imprisonment was relevant to prove why she reported the abuse when she did.

Furthermore, similar to *Clark*, the purpose of K.C.'s testimony regarding Anderson's imprisonment was solely to provide context regarding the "overall sequence of events surrounding the crimes and to the events which led to them being reported to authorities." 267 S.W.3d at 681. Excluding the reason why K.C. reported Anderson's abuse, after she had been experiencing it for approximately three years, would have left the jury with "an incomplete and fragmented picture of the circumstances" surrounding how K.C.'s abuse was discovered by the authorities. *Kerr v. Commonwealth*, 400 S.W.3d 250, 263 (Ky. 2013). K.C.'s knowledge of Anderson's imprisonment, therefore, was clearly inextricably intertwined with her decision to report his abuse.

The trial court also took various precautions to ensure Anderson was not unduly prejudiced by the evidence. At trial, the parties were prevented from using the adjective "federal" when describing Anderson's prison sentence, and the trial court admonished the jury to further reduce any potential unfair prejudice against Anderson. The admonition was written by Anderson's attorney and administered without objection from the Commonwealth. The "jury is presumed to follow the trial court's admonition." *Doneghy v. Commonwealth*, 410 S.W.3d 95, 107 (Ky. 2013) (quoting *Burton v. Commonwealth*, 300 S.W.3d 126, 143 (Ky. 2009)). In this case, it is evident that

10

the trial court did not abuse its discretion in permitting K.C. to testify to her knowledge of Anderson's imprisonment, as her testimony was relevant to her reasoning for reporting the abuse, inextricably intertwined with the context and discovery of the abuse, and various precautions were taken to ensure the evidence did not unfairly prejudice Anderson.

### 3. Evidence of Alleged Sexual Abuse of M.A.

The trial court allowed M.A. to testify regarding her allegation of sexual abuse against Anderson. Anderson objected to the testimony in a pretrial motion and, in a hearing on that motion, argued that it was unduly prejudicial and irrelevant. The trial court disagreed and ruled that the evidence was admissible. In its ruling on the matter, the trial court determined that the similarities between M.A.'s allegation and K.C.'s allegation tended to show a modus operandi and served to prove motive, intent, preparation, plan, and absence of mistake. On appeal, Anderson argues that M.A.'s allegation of sexual abuse did not bear sufficient similarities to K.C.'s allegation to show a modus operandi. We disagree.

Starting with the first *Bell* factor, we hold that the trial court did not abuse its discretion in determining that M.A.'s allegations were relevant for a purpose other than merely proving Anderson's criminal disposition. In sex offense cases, this Court has previously upheld the admission of evidence of prior sexual misconduct as proof of the *corpus delicti* where the prior misconduct is sufficiently similar to the charged offense to indicate that both acts were committed by the same person. *Dickerson v. Commonwealth,* 174

11

S.W.3d 451, 467–70 (Ky. 2005) (discussing the sufficient commonality necessary to establish a "signature crime"). To be admissible for this purpose, the method of the commission of the charged and uncharged acts must be "so similar and so unique as to indicate a reasonable probability that the crimes were committed by the same person." *Id.* at 468-69 (quoting *Adcock v. Commonwealth*, 702 S.W.2d 440, 443 (Ky. 1986)). Where the factual similarities rise to a level of modus operandi, admitting evidence of the uncharged child sexual abuse does not impermissibly ask the jury to infer that the defendant is guilty simply because he has previously engaged in other child sexual abuse; rather, it permissibly allows for an inference of guilt based instead upon the *striking factual similarity* between the charged and uncharged acts. *Newcomb v. Commonwealth*, 410 S.W.3d 63, 74 (Ky. 2013).

In *Leach v. Commonwealth*, 571 S.W.3d 550, 555 (Ky. 2019), this Court held that evidence that the defendant had previously sexually abused an eleven-year-old girl was admissible to prove modus operandi in a prosecution for the sexual assault of a nine-year-old girl. There, while the crimes were not identical, they were strikingly similar in that both girls were related to defendant by marriage, of similar ages when defendant perpetrated the abuse, the sexual abuse in both cases progressed from kissing to fondling, and in both cases, defendant devised a game to play in the woods behind his house, using a motor vehicle, to get the girls alone. *Id.*

Determining whether child sex abuse allegations bear such striking factual similarities as to demonstrate modus operandi and are thus admissible

12

under KRE 404(b) is "a difficult, fact-specific inquiry" that requires the trial court to "engage in a searching analysis of the similarities and dissimilarities" between the allegations. *Clark*, 223 S.W.3d at 96-97. In turn, this Court must examine what similarities exist between Anderson's abuse of K.C. and his alleged abuse of M.A., such that Anderson's abuse of both girls constituted a distinct pattern necessary to qualify for the modus operandi exception. *Id.* at 98.

Here, M.A. testified that Anderson abused her at the end of the summer in 2014 when she was visiting him during her summer break from school. This was the first summer that M.A. had visited Anderson without K.C. present. Regarding the alleged abuse, M.A. testified that she was sleeping in a room in Lorraine's house, when she woke up to someone putting his hands down the front of her pants and using his fingers to touch her vagina. M.A. testified that she was shocked to discover it was her father, Anderson. When she asked what he was doing, he responded by saying "nothing," told her to go back to sleep, and left the room. M.A. testified that she called her mother to pick her up early. This was the last time M.A. visited the property while Anderson was there.

In support of the testimony's admissibility, the Commonwealth relies upon the following similarities: both victims were of the same approximate age; both were bi-racial and bore a remarkable physical resemblance to each other; Anderson was a father figure to both; and Anderson abused both girls by approaching them as they slept and rubbing their vaginas under their pajamas. Under *Clark,* the mere facts that Anderson touched M.A.'s genitals

13

and that the girls were roughly the same age—only a year and a half apart—would not justify admission pursuant to the modus operandi exception. However, the additional facts that Anderson had abused both K.C. and M.A. on his mother's property, that he abused each of them in the same manner while they were asleep without another conscious adult nearby, that the girls bore a remarkable physical resemblance to each other, and that Anderson acted as a father figure to both girls established a pattern of conduct "so similar and so unique as to indicate a reasonable probability that the crimes were committed by the same person." *Dickerson,* 174 S.W.3d at 468-69 (quoting *Adcock,* 702 S.W.2d at 443).

K.C. and M.A.'s abuse allegations are not identical, and the differences are worth discussing. The abuse alleged by M.A. was not as extensive as that perpetrated against K.C. Further, K.C.'s abuse occurred over a period of years, while M.A.'s alleged abuse occurred on a single day. Importantly, this difference does not carry much weight, as M.A. did not visit the property without K.C. present until the summer of M.A.'s alleged abuse and Anderson's access to M.A. was limited because M.A. did not live with him full-time. An additional difference is that M.A.'s alleged abuse occurred in Lorraine's house, whereas K.C.'s abuse occurred in Anderson's house. However, both buildings were located in close proximity on the same property, and this Court has previously found that the exact geographic location of the crimes is not dispositive on the issue. *Clark,* 223 S.W.3d at 99. Furthermore, "it is not required that the facts be identical in all respects." *Leach,* 571 S.W.3d at 555.

14

Given the similarities of M.A.'s abuse and K.C.'s abuse, we cannot say that the trial court abused its discretion admitting M.A.'s testimony as relevant to establish a distinctive pattern of conduct and modus operandi under KRE 404(b).

The second factor of the *Bell* inquiry is probativeness, which requires us to determine whether the trial court abused its discretion in finding that a jury "could reasonably infer that the prior bad acts occurred and that [Anderson] committed such acts.'" *Leach*, 571 S.W.3d at 554 (quoting *Parker v. Commonwealth*, 952 S.W.2d 209, 214 (Ky. 1997)). We perceive no such abuse of discretion. M.A. testified that she relayed her allegation to her school counselor when she returned to school a few months after the alleged abuse. Moreover, M.A.'s allegation was consistent with the time frame and nature of K.C.'s allegations. Given the willingness of the victims to make the statements to her school counselor and the consistencies between the allegations, the trial court did not abuse its discretion by concluding that a jury could believe Anderson engaged in the conduct alleged by M.A.

Finally, we perceive no abuse of discretion in the trial court's conclusion that admission of M.A.'s testimony was not overly prejudicial. In the present case, it is undeniable that M.A.'s allegation was prejudicial to Anderson. However, KRE 403 makes clear that for evidence to be excluded on grounds of prejudice, "the probative value must be *substantially* outweighed by the prejudicial effect." *Leach*, 571 S.W.3d at 557. The striking factual similarities between K.C. and M.A.'s claims are highly probative of the ultimate issue in the

15

case—Anderson's guilt. Accordingly, M.A.'s testimony concerning her allegation that Anderson had sexually abused her was relevant for a permissible purpose under KRE 404(b), sufficiently probative, and did not have a prejudicial impact which substantially outweighed its probative value. The trial court did not abuse its discretion in admitting M.A.'s testimony.

### 4. Anderson's Inappropriate Conduct Toward K.C.

Prior to trial, the Commonwealth notified Anderson that it would seek to introduce details of how Anderson had "groomed" K.C. as part of the sequence of events that directly led to her abuse. Anderson objected and claimed that evidence was more prejudicial than probative. The trial court ultimately ruled that any testimony regarding the witnesses' precise observations about Anderson's conduct toward K.C. and their relationship, without subjective commentary, would be permitted. The parties agreed that the term "grooming" would not be used at trial. There were no objections during trial that either party violated this agreement.

On appeal, Anderson argues that allowing testimony from various witnesses concerning his favorable treatment of K.C. and inappropriately close relationship was highly prejudicial and unnecessary. Anderson claims that because K.C. testified about how he sexually assaulted her in detail, there was no need to introduce evidence regarding the sequence of events or preparation or plan. We disagree.

Evidence of the defendant's prior conduct may be admissible to prove the defendant's planning and preparation to sexually abuse the victim. In *Smith v.*

16

*Commonwealth*, we upheld a trial court's decision to admit evidence that the defendant had sexually abused the victim on a prior occasion and had the victim sit on his lap. 636 S.W.3d 421, 437 (Ky. 2021). Furthermore, the mother of the victim picked out a specific skirt for the victim that permitted the defendant to sexually assault the victim without obstacle. *Id.* We noted that the defendant's prior acts toward the victim were relevant to show his plan and preparation for continued sexual abuse of the victim. *Id.*

Here, various witnesses testified that Anderson seemed to favor K.C. over his wife and his biological children. M.A. testified that she and K.C. would often fight because Anderson gave K.C. more attention. Anderson's aunt, Judith Carroll, testified that Anderson and K.C. would sleep in the same bed and were often sitting very close to each other. Moore and K.C. testified that Anderson would often have K.C. sit on his lap. K.C. also testified that Anderson would often only bring take-out food home for her, but not Moore.

The evidence in this case was relevant to show the "sequence of events that led directly to" Anderson's abuse of K.C. *Id.* The witnesses' testimony regarding Anderson's favorable treatment of K.C. and their close relationship was necessary "to complete a picture by providing context and meaning for the central events, not to paint other pictures of criminality or misbehavior." *Kerr*, 400 S.W.3d at 263. Additionally, similar to *Smith*, Anderson's conduct toward K.C. was relevant to illustrate his preparation and plan to maintain proximity with K.C. and continue the abuse. The probative value of this evidence is not substantially outweighed by any prejudice. The trial court curbed any undue

17

prejudice to Anderson by limiting the witnesses' testimony to their objective, personal observations and ensuring that the parties did not use the term "grooming." For these reasons, we cannot say that the trial court abused its discretion in admitting this evidence.

**5. Anderson's Insistence that Moore Take Her Sedative Medication**

The trial court permitted the Commonwealth to introduce evidence that Anderson regularly encouraged Moore to take her prescribed, sedative medications in the evening before he sexually abused K.C. In Anderson's pretrial objection to this evidence, he argued that its probative value was substantially outweighed by its potential prejudicial value. In response, the Commonwealth argued that the evidence was relevant to prove Anderson's common scheme or plan to encourage Moore to consume her sedative prescriptions and thus causing her to be unaware of her surroundings and unable to interrupt Anderson's subsequent sexual abuse of K.C. However, on appeal, Anderson seems to abandon his pretrial argument and now alleges that the Commonwealth did not show the probative value of this evidence because it did not enter any medical or pharmacy records indicating that Moore was on the drug, nor did it provide testimony from a pharmacological expert concerning the effects of the drug.

Anderson's argument misunderstands the probative inquiry required by KRE 404(b). As noted above, when analyzing the probative value of prior bad acts evidence, we must determine whether the trial court abused its discretion in finding that a jury "could reasonably infer that the prior bad acts occurred

18

and that [Anderson] committed such acts." *Leach*, 571 S.W.3d at 554 (quoting *Parker v. Commonwealth*, 952 S.W.2d 209, 214 (Ky. 1997)). The inquiry under KRE 404(b), therefore, is not whether Moore's medications had the alleged impact on her consciousness, but instead whether the jury could reasonably infer that Anderson's alleged bad act (i.e., his insistence that Moore take her medications) occurred.

Taking this distinction into account, we perceive no abuse of discretion by the trial court. Here, both K.C. and Moore testified that Anderson would routinely insist that Moore take her nightly medications. Moore also testified that Anderson's insistence was often a point of contention between them, and that they would frequently argue about his constant reminders to Moore that she take her medications. Anderson himself admitted that he would frequently urge Moore to take her medications. Accordingly, there was no dispute that Anderson routinely insisted Moore take her medications, and we see no reason why the probative inquiry is not met here.

Anderson makes a brief, conclusory argument that this evidence "was also highly prejudicial. [Anderson] was portrayed not only as a sexual abuser but also as a drug pusher, making his wife take a drug that rendered her dead to the world." The mere fact that Anderson insisted that Moore take her prescribed medication is not, itself, unduly prejudicial. Further, this evidence is highly relevant to prove Anderson's common scheme or plan to sexually abuse K.C. Anderson would insist Moore took her medications, because he knew those medications would render Moore unaware of her surroundings.

19

This would ensure that Moore was unable to intervene in Anderson's subsequent sexual abuse of K.C. In turn, we conclude that the trial court did not abuse its discretion in admitting this evidence.

**6. Anderson's Act of Blowing Marijuana Smoke in K.C.'s Face**

At trial, the trial court permitted K.C. to testify about occasions in which she would be sleeping, or pretending to be asleep, and Anderson would wake her up by blowing marijuana smoke in her face. The Commonwealth argues that the evidence was relevant to Anderson's common plan or scheme and that it was inextricably intertwined with the sexual abuse. Anderson, however, argues that this evidence was irrelevant and highly prejudicial.

It is well established that evidence of prior bad acts is allowed when these acts have a special relationship to the offense charged and tend to prove the defendant engaged in a "common scheme or plan." *Pendleton v. Commonwealth,* 685 S.W.2d 549, 552 (Ky. 1985). Evidence of prior bad acts is admissible under this theory when those acts are "part and parcel" of a greater endeavor that includes the charged offense. *English,* 993 S.W.2d at 945. The hallmark of such evidence is that all parts of the common scheme or plan "tend to a common end." *Id.* at 943 (citing *Raymond v. Commonwealth,* 96 S.W. 515 (Ky. 1906) (Hobson, C.J., dissenting)).

In *Gilbert v. Commonwealth,* 838 S.W.2d 376, 378 (Ky. 1991), we considered the admissibility of evidence that one of the defendants, the stepfather of the victims, had given his stepdaughters marijuana and alcohol and forced them to watch sexually explicit movies. There, Johnny Gilbert and

20

Arletha Rose Gilbert were convicted of various sex offenses against Arletha's three biological daughters. *Id.* at 377. At the time of the abuse, Johnny was the stepfather to the three teenage daughters, aged seventeen, sixteen, and fifteen. *Id.* In addition to evidence that Johnny gave the girls marijuana and alcohol, there was also testimony that indicated that he and Arletha had told the girls that if they did not watch the pornographic movies, Johnny and Arletha would force the girls to remove their clothing and make them perform the same acts as depicted in the films. *Id.* at 378. We held that the evidence that Johnny gave the girls marijuana and alcohol was properly admitted, regardless of its potential prejudicial effect, because it reflected a part of the overall scheme to aid the stepfather in achieving his goal of engaging in sexual intercourse with his three stepdaughters. *Id.*

In the present case, K.C.'s testimony that Anderson would blow marijuana smoke in her face was relevant to reflect that it was often a step in Anderson's overall scheme to sexually abuse her. Specifically, K.C. testified that she would frequently sleep with her head under a blanket and pillows. She then stated that there were multiple occasions when she would be sleeping, or pretending to be asleep, and Anderson would blow marijuana smoke into her face through an airhole in the blanket. K.C. expressly testified that this particular act would often precede sexual abuse by Anderson. This initiating act was thus "part and parcel" of Anderson's greater plan to abuse K.C. *English*, 993 S.W.2d at 945. Additionally, similar to the evidence at issue in *Gilbert*, Anderson's repeated act of blowing the marijuana smoke into K.C.'s

21

face "indicate[d] a pattern of conduct and motive for forcing the young [woman] into adult sexual activity." 838 S.W.2d at 379.

Furthermore, we have long held that "[j]uries do not have to perform their functions of fact-finding in a vacuum." *Id.* Instead, "[i]n order to determine exactly what did or did not happen at any particular stage in the sequence, it was necessary that the jury see the entire picture." *Id.* (quoting *Ware v. Commonwealth*, 537 S.W.2d 174, 179 (Ky. 1976), overruled on other grounds in *Jenkins v. Commonwealth*, 496 S.W.3d 435 (Ky. 2016)). Thus, K.C.'s testimony was highly probative in allowing the jury to view "the entire picture" or rather, the entirety of the steps involved in Anderson's common scheme to sexually abuse K.C.

Furthermore, the probative value of this evidence was not substantially outweighed by any prejudicial effect. Anderson is correct that any mention of his marijuana use could be highly prejudicial. However, the trial court also recognized this fact, and limited mention of Anderson's marijuana use only to the occasions described by K.C. in order to limit any unfair prejudice to Anderson. As a result, the trial court did not abuse its discretion in admitting this evidence under KRE 404(b).

**B. The trial court did not abuse its discretion by denying Anderson's pretrial motion for continuance.**

Anderson next argues that the trial court committed a reversible error when it denied his April 13, 2023, motion to continue his trial, which was scheduled to begin eleven days later on April 24, 2023. We observe that

22

Anderson's pretrial motion adequately preserved this issue for our review. *See Helmick v. Commonwealth*, 686 S.W.3d 158, 162 (Ky. 2024).

The record suggests that Anderson's motion for continuance was largely a result of the Commonwealth's newfound intention to introduce evidence of Anderson's "other crimes" through the testimony of his biological daughter, M.A. Indeed, roughly two weeks earlier, the Commonwealth had provided notice pursuant to KRE 404(c) that it intended to introduce evidence proving that Anderson had previously abused M.A. In response, Anderson requested that the trial court either exclude M.A.'s testimony or order a two-month continuance to permit "further investigation" of M.A.'s allegations. At a hearing on the matter, the trial court asked Anderson's defense counsel what actions she would take to establish Anderson's defense during a two-month continuance, and defense counsel failed to provide any specifics.

On April 17, 2023, the trial court entered an order denying Anderson's motion on the basis that, "Defense counsel could not articulate a specific action that could be taken after a continuance that could not be taken between now and the scheduled trial." The trial court further observed that Anderson had little reason to be surprised by the Commonwealth's decision to introduce M.A.'s testimony because Anderson had separately been indicted for crimes he allegedly perpetrated against M.A.

The Rules of Criminal Procedure ("RCr") permit that, "The Court upon motion and sufficient cause shown by either party, may grant a postponement of the hearing or trial." RCr 9.04. Whether to grant a motion for postponement

23

or continuance is a decision left to the discretion of the trial court, and one that will only be disturbed on appeal if the trial court has abused its discretion. *Taylor v. Commonwealth*, 611 S.W.3d 730, 735 (Ky. 2020) (citing *Hilton v. Commonwealth*, 539 S.W.3d 1, 10–11 (Ky. 2018)); *Slone v. Commonwealth*, 382 S.W.3d 851, 856 (Ky. 2012). A trial court abuses its discretion when its decision is "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *English*, 993 S.W.2d at 945.

Of course, whether a continuance is warranted in a particular case is dependent on the "unique facts and circumstances" of that case. *Hilton*, 539 S.W.3d at 11 (quoting *Snodgrass v. Commonwealth*, 814 S.W.2d 579, 581 (Ky. 1991), overruled on other grounds by *Lawson v. Commonwealth*, 53 S.W.3d 534 (Ky. 2001)). And when assessing whether to grant a motion for continuance, this Court has instructed the Commonwealth's trial courts to balance and consider an array of factors, including: "length of delay; previous continuances; inconvenience to litigants, witnesses, counsel and the court; whether the delay is purposeful or is caused by the accused; availability of other competent counsel; complexity of the case; and whether denying the continuance will lead to identifiable prejudice." *Snodgrass*, 814 S.W.2d at 581 (citing *Wilson v. Mintzes*, 761 F.2d 275, 281 (6th Cir. 1985)).

Of all of the *Snodgrass* factors, however, the moving party's ability to identify prejudice to his or her case is "especially important." *Bartley v. Commonwealth*, 400 S.W.3d 714, 733 (Ky. 2013). "The movant . . . must be able to state with particularity how his or her case will suffer if the motion to

24

postpone is denied." *Id.* (citing *Hudson v. Commonwealth,* 202 S.W.3d 17, 23 (Ky. 2006)). "Conclusory or speculative contentions" are insufficient. *Id.*

On appeal, Anderson argues that each of the seven *Snodgrass* factors weighs in his favor. He asserts that his proposed two-month continuance was not an "extraordinary inconvenience" to anyone, that the Commonwealth is largely to blame for the trial's previous continuances, and that the Commonwealth's decision to introduce M.A.'s testimony made his defense "more complicated" less than a month before trial.

Here, it appears that the trial court only expressly considered two of the seven *Snodgrass* factors in ruling on Anderson's motion for continuance—the proposed length of delay and identifiable prejudice. But because the record makes clear that Anderson's case was punctuated by delay, and that Anderson failed to identify what prejudice might result from the trial court's denial of his motion, we cannot say that the trial court abused its discretion in this instance.

In April 2023, Anderson had been awaiting trial for more than two years after having been originally charged via information in December 2020. Throughout those two years, Anderson's trial—originally scheduled for July 27, 2021—was postponed on four separate occasions. Most notably, the trial court ordered a one-year continuance, postponing the trial from March 2022 to March 2023, after the Graves County Courthouse was severely damaged by a violent tornado. At Anderson's request, the trial court ordered a subsequent continuance, postponing the trial from March 8, 2023, to April 24, 2023, after

25

the grand jury returned a new, superseding indictment charging Anderson with eighteen distinct crimes. On appeal, Anderson makes no argument that the trial court's relief in that instance left him insufficiently prepared for his April 2023 trial date. Accordingly, Anderson's April 13, 2024, request for a two-month continuance—premised solely on the Commonwealth's intention to introduce testimony from M.A.—would have been the fifth time Anderson's trial had been postponed. Obviously, the previous significant delays to Anderson's trial weighed against granting his motion.

Most fatal to Anderson's claim on appeal, however, is that he failed to show the trial court—with particularity—how his defense would be prejudiced if his motion for continuance was denied. In his motion for continuance, Anderson argued that the Commonwealth's "surprise" decision to introduce M.A.'s testimony would force him to "try [two] cases at one time," and that his counsel "ha[d] not had time to investigate this announced witness." But when questioned by the trial court as to what steps he would take to fortify his defense during his proposed continuance—*i.e.,* what steps he could not feasibly take in the remaining time before trial—Anderson failed to offer any particulars. Anderson's counsel offered only that, "I can't say what I don't know. I'm just saying that it would allow us more time to be better prepared for trial." As previously stated, however, such "speculative" concerns are generally insufficient to warrant a continuance. *Bartley*, 400 S.W.3d at 733. While a continuance can be an appropriate remedy to ameliorate the prejudicial effect of what a party perceives to be "surprise" evidence, the moving party "must be

26

able to state with particularity how his or her case will suffer if the motion to postpone is denied." *Id.* (citing *Hudson*, 202 S.W.3d at 23). When a party moving for a continuance does not make a full-throated argument to the trial court, it becomes increasingly difficult for this Court to say that the trial court abused its discretion in denying that motion.

Perhaps even more damaging to Anderson's argument on appeal is that he has failed to identify any prejudice that actually resulted from the trial court's alleged error. Even now, Anderson has not identified what additional actions he might have taken to more thoroughly investigate M.A.'s testimony with the benefit of two-months' additional time. Nor does he allege that he was unable to effectively cross-examine M.A. at trial. Accordingly, it is clear the trial court did not abuse its discretion in this instance; its decision was not "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *English*, 993 S.W.2d at 945.

### C. The trial court's failure to *sua sponte* order a continuance on the morning of trial did not constitute palpable error.

Anderson next argues that the trial court made a reversible error when it failed to order a continuance after learning that Anderson's defense counsel had not watched a video recording of his previous interview with police prior to trial.

On the eve of Anderson's trial, his defense counsel notified the Commonwealth that she could not access a recording of Anderson's 2014 interview with the Kentucky State Police that she had received in discovery. The next morning—the first day of Anderson's trial—Anderson's defense

counsel intimated to the trial court that she had not watched the recording in question, that she had "just recently" received the recording from the Commonwealth, that she could not open the digital file that had been sent to her, and that the recording purportedly contained exculpatory evidence.[1] The Commonwealth, however, suggested that the defense had previously received copies of the recording in question on two occasions—once in August 2022 and once in February 2023. Perhaps recognizing the predicament at hand, the Commonwealth also broached the subject of ordering a continuance to the trial court. The Commonwealth did, however, make clear that it was not seeking a continuance.

Despite knowing that she had not yet reviewed evidence that her client perceived as exculpatory on the morning of trial, Anderson's defense counsel failed to make a clear motion for continuance. Instead, Anderson's defense counsel simply pleaded that the trial court allow her to listen to and discuss the recording with Anderson. The trial court finally suggested that the parties proceed to trial and that the defense listen to the recording during that day's lunch break—a suggestion that neither party expressly objected to.

After the parties conducted voir dire, the jury was excused for the day, and the defense was able to successfully access and watch the recording

---

[1] It appears from the record that officials from the Kentucky State Police and the Cabinet for Health and Family Services interviewed Anderson in 2014 regarding K.C.'s allegations of abuse. During the parties' pretrial colloquy with the trial court regarding that recorded interview, Anderson's defense counsel suggested that Anderson had made statements denying K.C.'s allegations during the interview. Upon our review of the record, it seems that the defense perceived Anderson's prior out-of-court denials to be exculpatory evidence relevant to his defense.

28

during the lunch break. Later that afternoon, the parties and the trial court discussed whether portions of the recording could be admitted as evidence at trial. The defense expressed a desire to introduce some portions of the recording, however, no portion of the recording was ever admitted.[2] The defense did not request a continuance at this time.

On appeal, Anderson again evokes the *Snodgrass* factors and argues that the trial court erred in failing to order a continuance in this instance. More specifically he asserts that (1) any delay occasioned by a continuance would not have been lengthy, (2) any delay would be attributable solely to his defense counsel, not him, and (3) he suffered identifiable prejudice as a result of the trial court's alleged error because, "There were facts to be absorbed by the defense attorney and discussions to be had with [Anderson]." Anderson argues that the trial court should have postponed his trial "for at least a few days."

First, we note that Anderson failed to properly preserve his arguments for our appellate review, because he did not make his desire for a continuance known before the trial court and only raises that issue now for the first time on appeal. *See* RCr 9.22; *Cf. Helmick*, 686 S.W.3d at 162 (holding that Appellant properly preserved issue of continuance by pretrial motion). While the Commonwealth did indeed raise the idea of ordering a continuance to the trial

---

[2] During the defense's case, Anderson did attempt to introduce a portion of the recording—assumedly to rebut the trial testimony of a social worker who had participated in his 2014 interview with police and testified to Anderson's prior out-of-court statements. It appears that Anderson was unable to successfully introduce that portion of the recording due to technical difficulties.

court during the parties' pretrial colloquy, the Commonwealth made its position clear—it was not seeking a continuance. At that opportune moment, the defense abjectly failed to broadcast its desire for a continuance.

Accordingly, pursuant to RCr 10.26, we will only review Anderson's claim for "palpable error." An error is palpable if it is "easily perceptible, plain, obvious and readily noticeable." *Brewer v. Commonwealth*, 206 S.W.3d 343, 349 (Ky. 2006). "When an appellate court engages in a palpable error review, its focus is on . . . whether the defect is so manifest, fundamental and unambiguous that it threatens the integrity of the judicial process." *Martin v. Commonwealth*, 207 S.W.3d 1, 5 (Ky. 2006). "Implicit in the concept of palpable error correction is that the error is so obvious that the trial court was remiss in failing to act upon it *sua sponte*." *Lamb v. Commonwealth,* 510 S.W.3d 316, 325 (Ky. 2017).

There was no palpable error here. While it is regrettable that Anderson's defense counsel failed to review evidence with her client in a timely manner, her error should not be imputed to the trial court. As previously stated, the potential for "identifiable prejudice" is a principal consideration in a trial court's decision whether to order a continuance. Here, the potential for prejudice arising from defense counsel's failure to review the recording of Anderson's 2014 interview with police was not so immediately and obviously perceptible so as to require the trial court to *sua sponte* order a continuance. Further, Anderson's brief fails to convince this Court that any identifiable

30

prejudice actually occurred as a result of the trial court's refusal to continue the trial.

While it would have undoubtedly been the best practice for Anderson's defense counsel to review all of the evidence she had received in discovery prior to the eve of trial, the evidence at issue here—a recording of Anderson's 2014 interview with police—does not appear to have been particularly important to Anderson's defense or the Commonwealth's prosecution. When the parties first discussed the recording on the morning of the first day of trial, the defense could only summarily assert that the recording was exculpatory because it contained footage of Anderson's prior out-of-court statements denying K.C.'s allegations—evidence that the Commonwealth correctly recognized would generally be barred by the rule against hearsay. *See* KRE 801. The defense also suggested that the recording contained references to the fact that Anderson had previously been incarcerated on separate criminal charges, which was evidence that Anderson had already previously objected to. The Commonwealth also told the trial court that Anderson had made certain "concessions" in his 2014 interview with police about previously rubbing K.C.'s feet and walking in on her in the shower. The parties had, however, already discussed that evidence in a prior hearing; so this too was not "surprise" evidence to Anderson. Accordingly, from these preliminary descriptions alone, we cannot say that the trial court should have immediately recognized that failing to order a continuance, and allowing the trial to proceed, would result in identifiable prejudice to Anderson's defense.

31

Most damaging to Anderson's claim on appeal, however, is that he has failed to identify any appreciable prejudice actually occasioned by the trial court's refusal to *sua sponte* order a continuance on the first day of his trial. He argues only that:

> [Anderson] talked to police in 2014. While he denied the allegations generally, there were, as the Commonwealth pointed out, some concessions in the interview like lotion on feet, sleeping in the same bed, etc. In other words, this was not an interrogation where the defendant said, "I didn't do it," and then shut his mouth. There were facts to be absorbed by the defense attorney and discussions to be had with Bobby. Defense counsel could not even figure out how to play a portion of the tape for the jury.

Even with the benefit of hindsight, Anderson fails to articulate the significance of his recorded interview with police to his defense. He does not identify what actions he would have taken to bolster his defense if the trial court had ordered a continuance. And Anderson does not even explain how his defense counsel's failure to watch the recording prior to trial contributed to his conviction—presumably because no portion of the recording was ever admitted into evidence. Accordingly, we cannot say that the court committed a palpable error here. We have not identified any error "so manifest, fundamental and unambiguous that it threaten[ed] the integrity of the judicial process." *Martin*, 207 S.W.3d at 5.

### III.   CONCLUSION

For the foregoing reasons, this Court affirms the judgment of the Graves Circuit Court.

All sitting. Bisig, Conley, Goodwine, Keller, Nickell and Thompson, JJ., concur. Lambert, C.J., concurs in result only without opinion.

32

COUNSEL FOR APPELLANT:

Kathleen Kallaher Schmidt
Emily Holt Rhorer
Kayley Valentien Barnes
Assistant Public Advocates


COUNSEL FOR APPELLEE:

Russell M. Coleman
Kentucky Attorney General

James Daryl Havey
Assistant Attorney General